**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00098-TNM** |
| | : | |
| **COLE TOMAS ALLEN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISQUALIFY UNITED STATES ATTORNEY, ET AL.</u>**

The burden of proof to disqualify Government counsel is extraordinarily high. Disqualifying Government counsel "is a drastic measure," and this Court has stated that it "can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's Office." *Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 98 (D.D.C. 2012) (quoting *United States v. Bolden*, 353 F.3d 870, 875–76 (10th Cir. 2003)). Indeed, "disqualifying an entire United States Attorney's office is almost always reversible error." *Rodriguez*, 843 F. Supp. 2d at 98. "[E]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." *Bolden*, 353 F. at 879 (internal citations omitted).

In an attempt to meet this high burden, defendant Cole Allen's Motion to Disqualify United States Attorney, et al. (hereinafter, the "Motion"), ECF No. 24, cites a smattering of press clippings about U.S. Attorney Jeanine Pirro and Acting Attorney General Todd Blanche and argues that they suffer disqualifying conflicts of interest as victims, witnesses, and friends. The defendant's attempts to disqualify the U.S. Attorney, the Acting Attorney General, and the entire United States

Attorney's Office for the District of Columbia fall far short of meeting the exacting legal standard that this Court and others have imposed and should be denied.[1]

## BACKGROUND

On April 25, 2026, the defendant charged a U.S. Secret Service security checkpoint at the White House Correspondents' Association Dinner (the "Dinner"), fired a shotgun at a Secret Service officer and struck him in the chest, and ran towards the ballroom doors armed with guns and knives in an attempt to assassinate the President of the United States.   The Dinner has a storied history and is an annual celebration of the First Amendment.   In a typical year, more than 2,500 people from government and the news media attend the Dinner.   Some years, the President and the First Lady, as well as other senior government officials, attend.[2]

This year, President Trump publicly announced on March 2, 2026 that he would attend the Dinner on April 25, 2026.   Although many other senior government officials ended up attending the event, most, if not all, of them did not publicize their planned attendance in advance of the event.   Most relevant to the Motion, based on a review of public sources, neither U.S. Attorney Pirro nor Acting Attorney General Blanche publicly announced their planned attendance.

On May 5, 2026, a grand jury indicted the defendant on four counts: attempt to assassinate the President of the United States, in violation of 18 U.S.C. § 1751(c); assaulting an officer or employee of the United States with a deadly weapon, in violation of 18 U.S.C. §§ 111(a)(1) and

---

[1] At the defendant's May 11 arraignment, defense counsel clarified that the defense seeks to disqualify the entire U.S. Attorney's Office for the District of Columbia, as well as U.S. Attorney Pirro and the Acting Attorney General Blanche.   The defense stated at the arraignment that it was not currently seeking to disqualify the U.S. Department of Justice entirely.   Thus, the Government will not respond to that argument; though, for reasons similar to those stated herein, such a motion would fail.

[2] *See* https://whca.press/news/annual-dinner/dinner-archive/.

(b); transporting a firearm and ammunition in interstate commerce with the intent to commit a felony, in violation of 18 U.S.C. § 924(b); and using, carrying, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  *See* ECF No. 22. The defendant was arraigned on May 11, 2026 and remains detained pending trial.

## ARGUMENT

The defendant's Motion essentially makes three arguments in support of disqualification. *First*, the defendant argues that because U.S. Attorney ("USA") Pirro and Acting Attorney General ("Acting AG") Blanche attended the Dinner, they are purported victims, or at least witnesses, and cannot also be involved in the prosecution of this case.  Motion at 11.  *Second*, the defendant argues that because the media has written stories about USA Pirro's close relationship with President Trump, she has a disqualifying conflict of interest.  *Id.* at 10, 12–13.  *Third*, the defendant argues that even if there is no actual conflict of interest, the appearance of a potential conflict of interest warrants disqualification.  *Id.* at 12.  For the reasons stated below, each of these arguments fails.

I.    **Neither U.S. Attorney Pirro Nor Acting Attorney General Blanche Has an Actual of Conflict of Interest**

a.    *USA Pirro and Acting AG Blanche Are Not Victims in a Legal Sense*

USA Pirro and Acting AG Blanche are not victims in a legal sense simply because they attended the Dinner.   The defendant has been charged with four crimes: attempt to assassinate the President of the United States, assault on a federal officer, interstate transportation of a firearm to commit a felony, and using, carrying, brandishing, and discharging a firearm during a crime of violence.   The direct victims of those crimes are the Secret Service officer whom the defendant shot and the President whom the defendant sought to kill.   There are indirect victims too, but such

3

"victimization does not constitute a disqualifying interest." *United States v. Hubbard*, 493 F. Supp. 206, 207 (D.D.C. 1979), *aff'd sub nom. United States v. Heldt*, 668 F.2d 1238 (D.C. Cir. 1981). Are the Amtrak passengers who sat next to the defendant while he surreptitiously transported guns and ammunition across the country victims? What about the other law enforcement officers who were helping to secure the event when the defendant made his failed charge and fired his shotgun? Does each and every attendee at the Dinner have a disqualifying conflict of interest? What about their family members? The answer to these questions is "no." These people may be victims in a colloquial sense, but not in a way that would constitute a conflict of interest under the law. *See generally Hubbard*, 493 F. Supp. at 207–09 (denying motion to disqualify U.S. Attorney's Office where defendant burglarized the office of an AUSA and claimed that all prosecutors in the Office were victims of the obstruction charge because the defendant planned to deceive the AUSAs); *Heldt*, 668 F.2d at 1275 (affirming *Hubbard* and stating that the U.S. Attorney's Office was not the "victim" of the defendant's obstruction offense); *see also* 18 U.S.C. § 3771(e)(2)(A) (defining "crime victim" under the Crime Victims' Rights Act to mean "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia"). None of the crimes that the defendant has been charged with were committed against USA Pirro or Acting AG Blanche.

The defendant was not charged with attempting to assassinate anyone other than the President of the United States, and the assault with a deadly weapon count alleges conduct related to a specific Secret Service officer, not USA Pirro or Acting AG Blanche. Moreover, the defendant's so-called manifesto does not identify USA Pirro or Acting AG Blanche by name. *See* Mot. for Pretrial Detention, ECF No. 10, at 7. Instead, it generically refers to "Administration

officials" as "targets," whom the defendant "prioritized from highest-ranking to lowest." *Id.* There is no indication that the defendant even knew that USA Pirro and Acting AG Blanche would be at the Dinner. If such a generic and unspecific threat were disqualifing as to USA Pirro and Acting AG Blanche, then taken to its extreme, it would disqualify a significant portion of people working within the executive branch, from "highest-ranking to lowest." That is not the law, however, and in situations where courts have disqualified prosecutors who were threatened, it is because those specific prosecutors faced targeted and direct threats from the defendant. *Compare e.g.*, *United States v. Spiker*, 649 F. App'x 770, 773 (11th Cir. 2016) (disqualifying AUSA whom defendant attempted to hire an assassin to murder and then attempted to attack with a knife in court), *with Resnover v. Pearson*, 754 F. Supp. 1374, 1388–89 (N.D. Ind. 1991) (on a habeas petition, concluding that prosecutor did not have a conflict of interest even though he believed the defendant had threatened him), *aff'd*, 965 F.2d 1453 (7th Cir. 1992).

The state court case *State v. Cope*, 30 Kan. App. 2d 893 (Kan. Ct. App. 2002), is particularly helpful in illustrating the difference between generic and vague threats of harm directed at prosecutors (which typically do not constitute a disqualifying conflict of interest) and targeted attempts to threaten or attack a specific prosecutor (which can constitute a disqualifying conflict of interest). In *Cope*, the defendant was charged with threatening to blow up a state courthouse that also housed the district attorney's office. *Id.* at 894. The defendant moved to disqualify the district attorney's office because "every person who worked in the courthouse was a potential victim of the crime and that the attorneys who worked in the district attorney's office would be biased by having a conflict of interest." *Id.* The trial court denied the defendant's motion to disqualify the district attorney's office and, on appeal, the defendant argued, among

other things, that the district attorney's office was the "object of his alleged threat and, as such, it was a crime victim and should not have been allowed to prosecute his case." *Id.* at 895.

The Kansas Court of Appeals rejected this argument. First, the court emphasized that "a conflict of interest warrants recusal only if the conflict is so grave as to render it unlikely that the defendant will receive fair treatment during all portions of the criminal proceedings." *Cope*, 30 Kan. App. 2d at 896; *accord Heldt*, 668 F.2d at 1277 (emphasizing the need to balance "the governmental interests in conserving judicial and prosecutorial resources and in preserving the appearance of impartiality with the interest of the defendant in receiving fair and evenhanded treatment from his accusers"). Then, the court discussed other recusal cases, including this Court's decision in *Hubbard*, 493 F. Supp. 206, and stated that "[t]he key in deciding whether a prosecutor should be disqualified is whether the prosecutor has a significant personal interest in the litigation which would impair the prosecutor's obligation to act impartially toward both the [government] and the accused." *Cope*, 30 Kan. App. 2d at 897. The court ultimately concluded that no disqualifying conflict of interest existed because the defendant did not "victimize[] the district attorney's office to such a degree that he created a conflict of interest." *Id.* The defendant "never directly threatened the district attorney's office," or "targeted a specific attorney . . . as the victim . . . of a specific crime." *Id.* The defendant's "argument that any staff member of any office in the building was a victim is simply too broad." *Id.*

The defendant's argument here is similarly too broad. If the defendant's generic threat to target all "Administration officials," including those who he did not know would even attend the Dinner, is sufficient to constitute a disqualifying conflict of interest for USA Pirro and Acting AG Blanche, then a significant portion of the executive branch, from "highest-ranking to lowest,"

6

are potential victims and suffer a potential bias. That would mean that a broad swath of the executive branch is disqualified from prosecuting this case. If the defendant's intention to target all "Administration officials" from the "highest-ranking to lowest" means that these executive branch employees are victims, then those employees' family members would also arguably be conflicted from playing any role in this criminal proceeding. That is not, and cannot, be the law. If it were, the administration of justice would grind to a halt and defendants would have an incentive to make broad threats against anyone they did not want involved in their criminal case, either as a prosecutor, a judge, or a member of the jury. This concern is only heightened if, as the defense argues, a purported conflict of interest of one prosecutor can disqualify an entire office. *See Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249, 252 (2d Cir. 1985) ("[I]f the disqualification of one government attorney could serve as the predicate for the disqualification of the entire United States Attorney's Office, the administration of justice would be irreparably damaged.").

The defendant's Motion does not claim that the defendant specifically targeted USA Pirro or Acting AG Blanche as among the "Administration officials" he sought to kill, and the evidence developed to date does not support this conclusion. The defendant's vague description of unspecified "Administration officials" as "targets" listed within his self-identified "rules of engagement" is insufficient, as a matter of law, to disqualify USA Pirro and Acting AG Blanche from participating in this prosecution.

**b.      *USA Pirro and Acting AG Blanche Are Not Likely Trial Witnesses***

Without identifying the rule by name, the defendant next argues that USA Pirro and Acting AG Blanche should be disqualified under the "advocate-witness" rule that typically prohibits a

7

prosecutor from acting as both prosecutor and witness.   Motion at 9–10.   Generally, "[t]he role of an advocate and of a witness are inconsistent; the function of any advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."   *Rosen v. N.L.R.B*, 735 F.2d 564, 575 n.18 (D.C. Cir. 1984); *see also* American Bar Association Model Rules of Professional Conduct, Rule 3.7 (except in certain enumerated exceptions, "[a] lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be a necessary witness") (emphasis added).[3]

The Government does not anticipate calling either USA Pirro or Acting AG Blanche as a witness during any portion of this criminal proceeding.   Neither USA Pirro nor Acting AG Blanche was an eyewitness to the defendant's actions at the Dinner on April 25, 2026.   And to the extent factual issues related to the events in the ballroom become relevant, there are ample other witnesses who can testify about those facts.   At the time of arraignment, defense counsel conceded that there is no "factual basis to say that right now" either USA Pirro or Acting AG Blanche "will be a fact witness for the defense."   Hr'g Tr. at 7 (May 11, 2026).   The Government agrees.   But even if the defendant's position was to change, "[t]he defendant is not entitled to call the prosecutor to testify absent a showing of compelling need."   *United States v. Weinberger*, 1992 WL 294877, at *5 (D.D.C. Sept. 29, 1992) (citing *United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990)).   "Unless the prosecutor has essential information that cannot be obtained by other means, he cannot be compelled to testify."   *Id.*; *see also United States v. Lorenzo*, 995 F.2d 1448, 1452–53 (9th Cir. 1993) ("A federal prosecutor may testify at a trial in which he is

---

[3] USA Pirro and Acting AG Blanche also do not plan to act as advocates *at trial*, which is another reason that the advocate-witness rule does not apply here.   *See Ambush v. Engelberg*, 282 F. Supp. 3d 58, 65 (D.D.C. 2017) ("Rule 3.7 only applies to trial counsel").

participating only if there is a compelling need."). "Attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness, and promptly withdraw from the conflicting role." *United States v. Prantil*, 764 F.2d 548, 553 (9th Cir. 1985).[4] Here, there plainly is no compelling need for USA Pirro or Acting AG Blanche to testify as witnesses, and neither intends to participate as a witness in this prosecution. Accordingly, they are not disqualified from this case.

Nor are USA Pirro and Acting AG Blanche disqualified under Department of Justice regulations regarding disqualification arising from personal or political relationships. *See* 28 C.F.R. § 45.2. Under those regulations, "no employee shall participate in a criminal investigation or prosecution if he has a personal or political relationship with any person or organization" that is "substantially involved in the conduct that is the subject of the investigation or prosecution" or "which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution." *Id.* § 45.2(a)(1) and (2). As an initial matter, by its own terms, Section 45.2 "pertains to agency management and is not intended to create rights

---

[4] The defendant cites *Prantil*, 764 F.2d 548, to support his argument that USA Pirro and Acting AG should be disqualified as witnesses. Motion at 6–7. But *Prantil* is inapposite. There, the defendant was a criminal defense attorney who was convicted of, among other crimes, perjury and accessory after the fact. *Prantil*, 764 F.2d at 549. The defendant's convictions related to his representation of two other defendants in a drug case and his relationship with a third charged defendant who was a fugitive (and who was also the husband and father of the two other defendants). *Id.* at 549–50. The AUSA who prosecuted the underlying drug case was personally involved in some of the events (like grand jury testimony) that formed the basis of the charges against the defense attorney, but he then prosecuted the defense attorney in the second case. *Id.* The district court denied the defendant's motion to disqualify the AUSA to allow him to testify as a witness in the second case. *Id.* at 551–52. The Ninth Circuit disagreed and reversed the district court because the AUSA was "a material witness and participant." *Id.* at 554. In contrast, neither USA Pirro nor Acting AG Blanche was a participant, percipient witness, or material witness to the crimes that the defendant has been charged with committing.

enforceable by private individuals or organizations." *Id.* § 45.2(d). It does not "give private litigants" like the defendant "a right to disqualify a prosecuting attorney." *United States v. Rodella*, 59 F. Supp. 3d 1331, 1366 (D.N.M. 2014). Therefore, even if the defendant demonstrated that 28 C.F.R. § 45.2 was implicated here (and it is not), the remedy would not be disqualification.

Yet, even if § 45.2 allowed the defendant to seek disqualification of Government attorneys, it would not apply here. The only person whom the defendant has identified as potentially having a disqualifying relationship with USA Pirro or Acting AG Blanche is President Trump. But while President Trump is an intended victim of some of the defendant's crimes, he was neither "substantially involved in the conduct that is the subject of the" prosecution nor does he have "a specific and substantial interest that would be directly affected by the outcome of the" prosecution. 28 C.F.R. § 45.2(a)(1) and (2). Nor does USA Pirro or Acting AG Blanche have a "personal relationship," as defined in § 45.2, that would require disqualification. Under § 45.2(c)(2), familial relationships with a parent, sibling, child, or spouse are presumed to qualify as "personal relationships." Friendships, on the other hand, "must be judged on an individual basis with due regard given to the subjective opinion of the employee." *Id.* § 45.2(c)(2). Whatever friendships USA Pirro and Acting AG Blanche have with President Trump, neither of them believes that friendship will hinder their ability to fairly and impartially participate in the prosecution of the defendant. Therefore, as with the defendant's other arguments for disqualification, disqualification under 28 C.F.R. § 45.2 should be rejected.

The defendant also argues that the Justice Manual requires recusal. Motion at 4–5. Not so. The Justice Manual requires U.S. Attorneys to consider recusals when they "become aware

of an issue that could require a recusal . . . as a result of an actual or apparent conflict of interest."

Justice Manual § 3-1.140.   As discussed herein, no such conflict exists.   Moreover, by its own

terms, the Justice Manual "is not intended to, does not, and may not be relied upon to create any

rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."

Justice Manual, § 1–1.200; *see also United States v. Blackley*, 167 F.3d 543, 548–49 (D.C. Cir.

1999) ("violations of [Justice] Manual policies by DOJ attorneys or other federal prosecutors

afford a defendant no enforceable rights"); *Rodriguez*, 843 F. Supp. 2d at 100–01 ("failure of a

United States Attorney's Office to comply" with the Justice Manual "provides no basis upon which

Plaintiffs could bring a motion to disqualify").   Thus, even if the defendant's claim had merit (and

it does not), the Justice Manual would not be the source of a remedy.

> **c.**     ***USA Pirro's Relationship with President Trump is Not a Conflict of Interest***

Lastly, the defendant argues that because the media has reported that USA Pirro has a long-

standing personal relationship with President Trump, she should be disqualified.   Motion at 10.

This argument is nonsense.   News reporting on the nature and details of a relationship between

two public figures is hardly sufficient evidence to justify an inference of either an improper interest

or personal bias that would interfere with USA Pirro's professional judgment as a prosecutor.

While it is true that a prosecutor should be "disinterested," the Supreme Court has recognized that

prosecutors need not be as disinterested as judges.   *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481

U.S. 787, 807–08 (1987).   "In an adversary system, prosecutors are necessarily permitted to be

zealous in their enforcement of the law."   *Id.* at 807; *see also Dick v. Scroggy*, 882 F.2d 192, 197

(6th Cir. 1989) ("Prosecutors are supposed to be advocates; judges are not").   The defendant's

allegations regarding USA Pirro's relationship with President Trump are not a "reason to believe

11

that the prosecutors will not in this case fairly execute their responsibilities." *United States v. White*, 2009 WL 10736773, at *5 (N.D. Ill. May 13, 2009).

Moreover, although President Trump is one of the victims, the defendant targeted him because of his official position as President of the United States and not as a private citizen. Indeed, the lead 18 U.S.C. § 1751(c) charge specifically protects the President, the President-elect, the Vice President, and other select employees of the Executive Office of the President and Office of the Vice President. *See* 18 U.S.C. § 1751(a). In the context of motions to recuse judges—who are held to a higher standard of neutrality than prosecutors—the late Justice Scalia wrote that "while friendship is a ground for recusal of a Justice where the personal fortune or the personal freedom of a friend is at issue, it has traditionally not been a ground for recusal when official action is at issue, no matter how important the official action was to the ambitions or the reputation of the Government officer." *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 916 (2004) (Scalia, J.) (emphasis removed). While President Trump's official actions are not at issue in this case, his role as a victim is because of his official role as President. Thus, Justice Scalia's words about whether friendship is a valid basis for recusal are worth noting:

> Many Justices [and other senior government officials] have reached [their positions] precisely because they were friends of the incumbent President or other senior officials—and from the earliest days down to modern times Justices have had close personal relationships with the President and other officers of the Executive. John Quincy Adams hosted dinner parties featuring such luminaries as Chief Justice Marshall, Justices Johnson, Story and Todd, Attorney General Wirt, and Daniel Webster. Justice Harlan and his wife often stopped in at the White House to see the Hayes family and pass a Sunday evening in a small group, visiting and singing hymns. Justice Stone tossed around a medicine ball with members of the Hoover administration mornings outside the White House. Justice Douglas was a regular at President Franklin Roosevelt's poker parties; Chief Justice Vinson played poker with President Truman. A no-friends rule would have disqualified most of the Court in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952),

12

the case that challenged President Truman's seizure of the steel mills.   Most of the Justices knew Truman well, and four had been appointed by him.

*Id.* at 916-17 (internal citations omitted).   For similar reasons, the defendant's proposed "no-friends" rule for Government attorneys, especially those appointed by the President, should be rejected.   The defendant has not identified any specific reason why USA Pirro's relationship with President Trump will hinder her ability to fairly execute her responsibilities as the U.S. Attorney for the District of Columbia.

At bottom, the defendant's argument seems to be that because the media has reported that USA Pirro has a close relationship with President Trump, the *appearance* of a conflict of interest justifies disqualification.   Motion at 12–13.   But the D.C. Circuit has held that "[w]ith regard to an appearance of a conflict on the part of the prosecution, on appeal a defendant has cause to complain only if he was prejudiced."   *Heldt*, 668 F.2d at 1277.   Importantly, "[w]hile the appearance of impropriety, or of a conflict of interest, may be sufficient to disqualify a judge, it is inadequate to disqualify a prosecutor."   *Rodella*, 59 F. Supp. 3d at 1367; *see also Lorenzo*, 995 F.2d at 1453 (the appearance of a conflict requires prejudice to disqualify government counsel); *United States v. Nosal*, 2009 WL 482236, at *3 (N.D. Cal. Feb. 25, 2009) ("The Ninth Circuit has made clear the appearance of impartiality is insufficient grounds for prosecutorial disqualification.").   "While zealous advocacy in prosecuting a case, which might eliminate the defendant's freedoms and subject him or her to retribution, certainly creates the appearance of a bias against the defendant or even of a conflict of interest between the prosecutor and the defendant, this advocacy is nothing more than the prosecutor fulfilling his or her duties."   *Rodella*, 59 F. Supp. 3d at 1367.   Thus, even assuming the appearance of a conflict of interest, such an

13

appearance, with nothing more, does not warrant disqualification of USA Pirro, Acting AG Blanche, or the U.S. Attorney's Office.[5]

The defendant cites to *United States v. Sigillito*, 759 F.3d 913 (8th Cir. 2014), to argue that "the potential of perceived bias" warrants disqualification here. Motion at 11–12. But that is not what *Sigillito* holds. There, a U.S. Attorney's Office initially chose to recuse itself from the prosecution because one of its supervisors was the cousin of a testifying witness and victim. 759 F.3d at 928. Despite the U.S. Attorney's Office's self-recusal, two of its prosecutors ultimately participated in the prosecution. *Id.* The defendant argued that because of the familial relationship between their supervisor and the testifying witness, the two prosecutors suffered a disqualifying conflict of interest. *Id.* The Eighth Circuit rejected this argument, finding that the defendant "failed to demonstrate that [the supervising AUSA] exercised any authority in the case that would call the fairness of the trial into question" and, therefore, "failed to demonstrate the presence of an actual conflict of interest." *Id.*

---

[5] Without citing any legal authority, the defendant also argues that USA Pirro's and Acting AG Blanche's public statements in the immediate aftermath of the defendant's attack were "inflammatory," "inappropriate," and somehow warrant disqualification. Motion at 9–10. The Department of Justice's mission is to uphold the rule of law, keep America safe, and protect civil rights. *See* https://www.justice.gov/about. Often, that requires keeping the public informed about crimes that have just occurred, the initiation of a prosecution, and developments in ongoing prosecutions. *See* D.C. Rules of Prof'l Conduct 3.8, cmt. 3 (emphasizing permissibility of prosecutor informing public about prosecution). Such public statements are not a valid basis for disqualification. For example, in *United States v. McVeigh*, 944 F. Supp. 1478 (D. Colo. 1996), the defendant moved to disqualify the Attorney General and the entire Department of Justice from consideration of whether to seek the death penalty in the Oklahoma City bombing case. The defendant claimed that the Attorney General should be disqualified because she publicly announced that the government would seek the death penalty before a defendant was even arrested. *Id.* at 1483. The court denied the motion, in part, because the decision to seek the death penalty was a matter of prosecutorial discretion and part of the Justice Department's job. *Id.*

Here, USA Pirro is not related to any victim or testifying witness. Nor has the defendant identified any supervisory or decision-making authority that USA Pirro might exercise that would call into question the fairness of the trial because of an actual conflict of interest. The defendant suggests that because USA Pirro attended the Dinner and reportedly has a long-standing relationship with President Trump, she will not be able to dispassionately execute her duties as U.S. Attorney in an unbiased manner. Motion at 1–2. But this is pure conjecture and, as discussed above, zeal in advocacy is not disqualifying bias. *Young*, 481 U.S. at 807.

## II.    The Defendant's Motion to Disqualify the U.S. Attorney's Office Should Be Denied

Neither USA Pirro nor Acting AG Blanche has a conflict of interest. But even if the Court were to conclude that one of them does, disqualifying the entire U.S. Attorney's Office would not be the appropriate remedy. There is no allegation that anyone else in the U.S. Attorney's Office has a conflict of interest, actual or apparent. Therefore, other than the defendant's allegations regarding USA Pirro and Acting AG's roles as purported victims, witnesses, and friends, there is no independent basis to disqualify the U.S. Attorney's Office. *See Grand Jury Subpoena of Ford*, 756 F.2d at 254 (disqualifying a U.S. Attorney's Office because of the disqualification of a single government attorney would "irreparably damage[]" the administration of justice); *see also Bolden*, 353 F.3d at 879 ("[E]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification"); *Rodella*, 59 F. Supp. 3d at 1364 ("No court has, however, disqualified an entire United States Attorney's Office without being reversed").

If, on the contrary and as the defendant argues, the defendant's description of unspecified "Administration officials" as his targets disqualifies USA Pirro and Acting AG Blanche, and those

15

disqualifying facts are attributed to the entire U.S. Attorney's Office, then defendants could be incentivized to remove a prosecutor from their case, or simply delay and obstruct their prosecution, by threatening the line AUSA.   *See, e.g.*, *State v. Robinson*, 143 N.M. 646, 652 (Ct. App. 2008) ("We agree with these cases that, as a matter of policy, a defendant does not create a disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats."); *State v. McManus*, 941 A.2d 222, 232 (R.I. 2008) (holding that when a defendant allegedly threatens the life of a prosecutor, requiring that prosecutor's disqualification would "provide an incentive for defendants to engage in such unlawful conduct."); *Kindred v. State*, 521 N.E.2d 320, 327 (Ind. 1988) (finding the alleged threat to the prosecutor's life was not a sufficient conflict of interest to justify disqualifying the prosecutor and appointing a special prosecutor, in part because allowing prosecutors "to be disqualified merely upon the unilateral action of defendants . . . would lead to absurd consequences.").   The Court should not encourage such tactics.

"Disqualifying the entire USA's office from representing the government [would also] raise[] important separation of powers issues."   *Bolden*, 353 F.3d at 875.   The defendant's suggestion that a special counsel should be appointed to this case, Motion at 3–4, would be an especially egregious violation of the executive branch's power to determine "whom it can appoint to serve as its prosecutors."   *United States v. Silva-Rosa*, 275 F.3d 18. 22–23 (1st Cir. 2001); *see also Bolden*, 353 F.3d at 879 ("[W]e can presume that, in most cases, the Executive is in a better position than a judge to decide who can best represent its position").   For that reason, "[t]he disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary."   *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995); *see also United States v. Hasarafally*, 529 F.3d 125, 128 (2d. Cir. 2008) ("While a private attorney's

16

conflict of interest may require disqualification of that attorney's law firm in certain cases, such an approach is not favored when it comes to the office of a United States Attorney, or, *a fortiori*, to the Department of Justice as a whole.") (internal citations omitted).

## CONCLUSION

"Unfortunately in the society in which we now live, it is all too commonplace that judges, prosecutors, and lawyers are threatened and their lives are in danger."   *Resnover*, 754 F. Supp. at 1388.   Such threats alone, however, are not a basis for disqualification, especially when they are vague and not specifically directed at the prosecutors working on a specific case.   USA Pirro and Acting AG Blanche are neither victims nor witnesses in any legally meaningful way.   The fact that happenstance delivered them to the Dinner when the defendant made his assassination attempt does not disqualify them from now prosecuting him.   Accordingly, and for the reasons stated above, the defendant's Motion should be denied.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Adam P. Barry*
ADAM P. BARRY (CA Bar No. 294449)
JOCELYN BALLANTINE (CA Bar No. 208267)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-6976
Charles.Jones3@usdoj.gov
Tel: (202) 252-7252
Jocelyn.Ballantine2@usdoj.gov
Tel: (202) 252-7793
Adam.Barry@usdoj.gov

17