**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA      :

      v.      :      **26-CR-98-TNM**

COLE TOMAS ALLEN      :

### REPLY TO GOVERNMENT'S OPPOSITION

Cole Tomas Allen, through undersigned counsel, files this reply in support of his motion to disqualify and respectfully requests this Honorable Court grant the motion.[1]  The government's opposition to Mr. Allen's motion rests upon the false premise that an appearance of impropriety is "inadequate to disqualify a prosecutor." ECF No. 27 at 13.  But the weight of the authority on this issue, including the relevant federal statute and professional guidance require dismissal.  In misapplying the standard of appellate review, the government attempts to insert an "actual conflict" requirement.  This Court is not tasked with determining prejudice from a denied motion to disqualify or from plain error review and instead faces a "very different" question than the one asserted by the government.  *See United States v. Heldt*, 668 F.2d 1238, 1277 (D.C. Cir. 1981) (requiring that the defendants *"on appeal"* prove "actual prejudice" in demonstrating a conflict of interest because the defendants

---

[1] Mr. Allen acknowledges that there may be a procedure in which U.S. Attorney Pirro and Acting Attorney General Blanche may be sufficiently insulated from this prosecution to cure any actual conflict or appearance of impropriety. *See e.g.*, *United States v. Hightower*, 2025 WL 1079037 at *5 (D. Md. 2025) (citing examples of proper and improper procedures for recusing an individual prosecutor).  The defense requests that this Court disqualify U.S. Attorney Pirro and Acting Attorney General Blanche and require the government to submit a status report setting forth the mechanism it intends to use to ensure the fair prosecution of Mr. Allen.

"have failed to move to disqualify on the ground of a conflict of due process." (emphasis added)). Because Mr. Allen's motion to disqualify has been timely filed, the Court's role here is to ensure the appearance of impropriety be avoided because of "the need to promote the appearance of justice." *Id.* at 1276.

## ARGUMENT

### I.    The government misstates the standard for disqualification

The Court should grant Mr. Allen's motion because an appearance of impropriety exists where—as here—supervisory prosecutors are both potential victims or witnesses, and close friends with the alleged complainant.

"That officers acting in a judicial capacity or quasi judicial capacity are disqualified by their interest in the controversy to be decided is of course the general rule." *Ganger v. Peyton*, 379 F.2d 709, 714 (4th Cir. 1967) (quotation marks omitted). "The prosecuting attorney is an officer of the court, holding a quasi judicial position. 'His primary responsibility is essentially judicial-the prosecution of the guilty and the protection of the innocent; his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest.'" *Id.* As a result, "prosecutors must not participate in any criminal investigation where the prosecutor has a personal or political relationship . . . with any person or organization known to have a specific and substantial interest that would be directly affected by the outcome of the investigation or proceedings." 30 *Moore's Federal Practice* Civil § 808.33 – Conflicts of Interest of Prosecutors.

The government acknowledges the controlling language from the Circuit's opinion in *Heldt* but urges this Court to apply a wholly incorrect and inappropriate

2

standard—one of appellate review. The government ignores that *Heldt* distinguishes between a case where a motion has properly been brought before the trial judge and the "very different one of what should be done when defendants have failed to move to disqualify on the ground of a conflict of interest, yet assert a denial of due process on appeal." *Id.* at 1276–77. In considering Mr. Heldt's post-conviction claim, the Circuit cited concerns about "conserving judicial and prosecutorial resources," and concluded that "on appeal," a defendant who at the trial court level *did not* raise the issue of a prosecutor's conflict of interest "has cause to complain only if he was prejudiced." *Id.* at 1277. But in a case where—as here—the defendant *does* file a timely motion to disqualify, the Circuit recognized that "[g]iven the need to promote the *appearance of justice*, a trial court on timely motion should disqualify a prosecutor from participating in a criminal action when he has a personal conflicting interest." *Id.* at 1276 (emphasis added). In the Circuit's view, the requirement of "actual prejudice" when a conflict of interest is raised for the first time on appeal, "reconcile[s] the governmental interests in conserving judicial and prosecutorial resources," on the one hand, "and in preserving the appearance of impartiality with the interest of the defendant in receiving a fair and evenhanded treatment from his accusers," on the other. *Id.* at 1277.

That the conflict of interest in *Heldt* related to the prosecutors' involvement in a civil case involving the defendant only strengthens Mr. Allen's position. A party's interest in criminal proceedings is substantially larger than that of parties in a civil

3

proceeding.  This is precisely why more stringent standards and burdens apply in the criminal context.

The Court should focus on the purpose of recusal policies and the Due Process interests underlying Mr. Allen's right to a fair trial.  Numerous court decisions are instructive and reflective of the critical need to dispense with an appearance of impartiality.  In *United States v. Bolton*, the Tenth Circuit found that there was an appearance of impropriety presented by an AUSA's appearance in a trial.  905 F.3d 319, 321 (10th Cir. 1990).  While the appellate court found that there was no abuse of discretion in the district court's denial of the motion to disqualify, it specifically noted that it would have upheld a decision to disqualify the prosecutor based solely upon "the appearance of impropriety presented by [the AUSA's] participation in the proceedings." *Id.*  More recently, the District of Maryland suggested that it may have disqualified an AUSA to address "public perception" harm from the "appearance of impropriety."  *United States v. Hightower*, 2025 WL 1079037 at *6 (noting that "'public perception' harm could have been ameliorated entirely had [the defendant] and his counsel raised the recusal issue with the Government or the Court when they discovered it . . .").

And longstanding concepts of fairness and canons of Professional Responsibility require that the "participation of attorneys in the prosecution [do] not present the appearance of impropriety." *See e.g.*, *United States v. Hubbard*, 493 F. Supp. 206, 209 (D.D.C. 1979).  That is why, by statute, the Attorney General is required to "promulgate rules and regulations which require the disqualification of

any officer or employee of the Department of Justice, including a United States Attorney . . . from participation in a particular investigation or prosecution if such participation may result in a personal financial or political conflict of interest, or the *appearance thereof*." 28 U.S.C. § 528 (emphasis added).

Despite the law and policy counseling in favor of Mr. Allen's position, the government counters with a single opinion from an out of district court, which observed that a prosecutor's "zealous" advocacy is "nothing more than the prosecutor fulfilling his or her duties." *United States v. Rodello*, 59 F. Supp. 3d 1331, 1367 (D.N.M. 2014). But the circumstances here are nothing like those in *Rodello*. There, the prosecutor "threatened the [defendant] not to violate the law, and when [the defendant] allegedly violated a different law, [he] was arrested and subject to prosecution." *Id.* The court then concluded that the "chronology of events d[id] nothing to create anything other than the appearance that [the prosecutor] is fulfilling the duties assigned to him." *Id.* The conflict of interest alleged here, however, is different in kind and scope, involving personal attachments to the alleged target and victim of the case by a prosecution team that is also composed of self-proclaimed victims and potential witnesses.

## II. The Court should disqualify Acting A.G. Blanche and U.S. Attorney Pirro

### A. The government's arguments regarding victims and witnesses cannot be squared.

The government attempts to argue that A.G. Blanche and U.S. Attorney Pirro are not victims by comparing them to "Amtrak passengers who sat next to" Mr. Allen when he traveled from California to D.C. or to "each and every attendee at the

Dinner." ECF 27 at 4. This comparison is absurd. It is the government's own theory that the intended victims of Mr. Allen's conduct were "the President of the United States as well as other high-ranking members of the U.S. government," ECF 10 at 15, *not* Amtrak passengers or every person who attended the dinner on April 25, 2026. And this is exactly the theory that A.G. Blanche and U.S. Attorney Pirro have proffered to the public in repeated, televised interviews, referring to themselves as potential targets who could have been killed. *See* ECF 24 at 7–10.

The government's reliance on the Crime Victims' Rights Act (CVRA) contradicts its own argument that Acting A.G. Blanche and U.S. Attorney Pirro are victims. That they are not specifically named in the charges against Mr. Allen does not mean that they are not alleged victims. Indeed, the CVRA defines a "crime victim" in broad terms, that would obviously include the challenged attorneys. As an Eleventh Circuit panel has explained, the CVRA "does not limit the class of crime victim to those whose identity constitutes an element of the offense or who happened to be identified in the charging document." *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008). Instead, "a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *Id.* That U.S. Attorney Pirro stated she understands the "sense of what it feels like now to be hunted" because of her attendance at the WHCD, puts her and Acting A.G. Blanche—as high-ranking government officials who were present— squarely within the class of people who could ultimately be considered a victim under the CVRA. ECF 24 at 8. The emotional response from "being hunted" is likely to play

6

have an impact in their prosecution of Mr. Allen and, at minimum, would appear to have some role. For that reason alone, the challenged attorneys should be disqualified.

The government's argument regarding the likelihood of U.S. Attorney Pirro or Acting A.G. Blanche appearing at trial as witnesses likewise does not hold water. Whether they are *likely* to appear at trial is irrelevant at this juncture. This equivocal representation is precisely why recusal is necessary. It would be a grave injustice if this case proceeded to trial and either party concluded that the challenged attorneys should be called as a witness. Indeed, the government has already suggested that "witnesses in the case" could include "individuals who were present at the Dinner." ECF 26 at 18.

Nor should the Court consider the defense's statement at arraignment "that there is 'no factual basis to say that right now' either U.S. A. Pirro or Acting A.G. Blanche 'will be a fact witness for the defense.'" ECF 27 at 8 (quoting Hr'g Tr. at 7 (May 11, 2026)). Defense counsel was unable to make any other representation because counsel did not—and still does not—have any discovery in this case. The Court therefore should not speculate as to whether there is a compelling need for their testimony at this time.

### B.    Mr. Allen's case should be supervised by disinterested prosecutors.

U.S. Attorney Pirro and Acting A.G. Blanche currently supervise this prosecution team at the expense of Mr. Allen's rights. Even without a trial, "[s]uch a conflict of interest clearly denie[s] [Mr. Allen] the possibility of fair minded exercise

of the prosecutor's discretion." *Ganger*, 379 F.2d at 712. "Aside from the possibility of a favorable charge decision, including nol pros, there is always the prospect of plea bargaining." *Id.* As the Supreme Court recognized in *Young*, the functions involving prosecutorial discretion are substantial:

> A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity.

*Young v. United States ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987).

Currently, the exercise of this discretion is in the hands of individuals who were present during what the government describes as a potential mass shooting. *See* ECF 10 at 14. Whether U.S. Attorney Pirro or Acting A.G. Blanche now proffer that they do not feel targeted or victimized is of no relevance. The Court should instead consider their prior, repeated statements, made in their official capacities. *See generally* ECF 24 at 7–10.

Additionally, whether they determined that the prosecution of Mr. Allen is best left without adding themselves (or other administration officials) to the indictment, or later to a superseding indictment, makes no difference. That U.S. Attorney Pirro and Acting A.G. Blanche (like President Trump) were not individually named in the letter allegedly penned by Mr. Allen is beside the point. The government's theory is that Mr. Allen was present to harm Administration officials. The government will ask the jury to infer that President Trump was one of those officials. It is

uncontroversial to conclude that those who are "targeted" would be "interested" parties, and Mr. Allen is entitled to a disinterested prosecutor.

Notably, the government does not deny factual allegations about either the relationships between the challenged attorneys and the President or the content of the statements they made contained in the defense motion.  If the government contests the well-established facts of the relationships between President Trump and U.S. Attorney Pirro and President Trump and Acting A.G. Blanche, the Court should hold an evidentiary hearing to complete the factual record.

C.      **The government cannot dispose of a conflict of interest through self-serving assurances.**

The rule proposed by the government makes little sense because it gives the final word to the very attorneys that appear to be conflicted.  The government's response proves this point.  The prosecution relies upon the self-reported representation that neither of the challenged attorneys "believes that their friendship" with the alleged victim[2] will "hinder their ability to fairly impartially participate in the prosecution of [Mr. Allen]."  ECF No. 27 at 10.  Remarkably, the government's filing also indicates that neither attorney "intends to participate as a witness in this prosecution," a decision that is typically within the purview of the trial teams representing the parties, rather than the potential witnesses.  In other words, the government is requesting the Court, the public, and Mr. Allen should simply trust U.S. Attorney Pirro and Acting A.G. Blanche.  These statements come at a time when

---

[2] Mr. Allen does not concede that Acting A.G. Blanche or U.S. Attorney Pirro are not potential victims in this case.   Indeed, the government has not committed to the idea that they may not later be named in, for example, a superseding indictment.

trust in the Department of Justice, including by members of the federal bench, is at an all-time low. *See* Lisa Rubin, *How Trump's Justice Department May be Forfeiting Judges' Trust*, MS NOW (May 18, 2026), https://www.ms.now/news/news-analysis/trump-justice-department-trust-presumption-regularity.    Business is not operating as usual; for example, DOJ recently announced the Anti-Weaponization Fund that created a slush fund to pay individuals who stormed the Capitol building to stop the certification of the 2020 election, authorizing the use of taxpayer money to pay individuals who, under oath, admitted to assaulting police officers with dangerous weapons.

The government seeks to reassure the Court by citing the Department of Justice's mission statement ,which predates this administration.  But simply relying on the DOJ's mission statement and the word of the challenged attorneys is undermined by the government's behavior in this and other cases since January 2025. *See* Walter Olson, *Do the Feds Still Merit the Court's Presumption of Regularity?*, CATO    Institute:    Cato    at    Liberty    (Jan.    8,    2026,    9:30    am), https://www.cato.org/blog/should-feds-today-benefit-presumption-regularity-court (noting that there have been "dozens of instances over the past year in which the executive's representations to courts or actions in connection with them have been in bad faith, motivated by retaliation, arbitrary or capricious, in defiance of court orders or established law, or—again and again—baldly untruthful").

More to the point, Acting A.G. Blanche's proffer that his friendship with the President will not harm his ability to be fair in this case is belied his actions in an

unrelated high profile criminal case. In *United States v. Abrego Garcia*, the district court specifically noted that Acting A.G. Blanche's statements were "direct evidence" of his "vindictive motive" in the case. 25-cr-115, ECF 312 at 18 (M.D. Tenn. May 22, 2026). In that case, neither Acting A.G. Blanche nor his friend were purported witnesses or victims. Yet his actions were unmistakably biased.

The government attempts to discredit Mr. Allen's argument about U.S. Attorney Pirro's clear conflict of interest by framing her "long-standing relationship with President Trump" as having merely been "reported" by the media. ECF 27 at 11, 13. But U.S. Attorney Pirro's loyalty to the President is not merely exemplified through how she runs the D.C. U.S. Attorney's Office. Indeed, the Chief Judge of this District recently concluded that a criminal investigation into Federal Reserve Chair Jerome Powell was opened by the D.C. U.S. Attorney's Office merely because he committed the crime of "displeasing the President." *In re Grand Jury Subpoenas*, 26-mc-12-JEB, ECF 23 at 2, (D.D.C. Mar. 13, 2026). That U.S. Attorney Pirro appears to have been directly involved in the improper investigation into Chair Powell, *see id.* at 24–26, suggests that her loyalty to the President will outweigh due consideration required of Mr. Allen's Constitutional rights.[3]

Ultimately, the very Department of Justice and United States Attorney's Office that has been met with repeated skepticism and disapproval by judges within this

---

[3] The government asserts that Mr. Allen "argues that USA Pirro's and Acting AG Blanche's public statements in the immediate aftermath" of the April 25 incident were "'inflammatory,' 'inappropriate,' and somehow warrant disqualification." ECF 27 at 14 n.5 (quoting ECF 24 at 9–10). The government, however, mischaracterizes Mr. Allen's argument that U.S. Attorney Pirro had become so personally invested in this prosecution that she—from her personal social media account, as opposed to her official government account—distorted what occurred during the parties' May 4, 2026 hearing.

District requests the Court approve its "just trust us" approach. *See, e.g., L.G.M.L. v. Noem*, 25-cv-2942-TJK, ECF 49 at 39 (D.D.C. Sept. 18, 2025) ("[T]he record and Defendants' conduct suggest that they are not applying their criteria accurately, consistently, or in ways that reflect good faith."); *National Endowment for Democracy v. United States*, 25-cv-648-DLF, ECF at 8–9 ("In light of the defendants' repeated maneuvers to impede the Endowment's flow of funds, the Court does not find credible an explanation offered in the shadow of pending litigation."); *Talbott v. Trump*, 25-cv-240-ACR, ECF 89 at 64 (concluding the government's ban "is soaked in animus and dripping in pretext"); *J.G.G. v. Trump*, 25-cv-766-JEB, ECF 81 at 15 (D.D.C. Dec. 22, 2025) ("Defendants' conduct, moreover, manifests a willful disregard of the Court's legally binding proscriptions."); *cf. United States v. Rabbitt*, 25-cr-693-AMP, ECF 187 (N.D. Il. May 21, 2026) (describing significant prosecutorial misconduct in high profile criminal case). But it is Mr. Allen whose Constitutional rights are at stake. The Court therefore cannot—and should not—be confident in the government's declaration that all will be well. Justice demands more.

## CONCLUSION

Whether the challenged attorneys should be disqualified from participation in this case rests on whether there is an appearance of a conflict of interest—not whether Mr. Allen can prove to this Court that he has actually been prejudiced. For the foregoing reasons, and any other such reasons as the Court determines at a hearing on Mr. Allen's motion, the Court should disqualify Acting A.G. Blanche and U.S. Attorney Pirro from participation in the prosecution of Mr. Allen.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
EUGENE OHM
TEZIRA ABE
SUZANNE ZAKARIA
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

13