**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **v.** | :          **26-CR-98-TNM** |
| **COLE TOMAS ALLEN** | : |

**OPPOSITION TO GOVERNMENT MOTION**

Cole Tomas Allen, through undersigned counsel, respectfully submits this limited Opposition to the Government's Motion for a Protective Order.   ECF 26; ECF 26-1 (Proposed Protective Order Governing Discovery).

Mr. Allen objects to the breadth of the government's Proposed Protective Order, which includes "all materials" under the "covered materials" it proposes to govern and specifically "[*a*]*ll* materials provided by the United States in preparation for, or in connection with, any stage of this case . . . ."   ECF 26-1 ¶ 1 (emphasis added). Protective orders, as authorized by the Federal Rules of Criminal Procedure, are not intended to be so broad in scope, even where the government proffers concern regarding third-party privacy and law enforcement security interests.   Rather than blanketing "all materials," the Protective Order should only govern materials that the United States identifies as either "Sensitive" or "Highly Sensitive."   Such a solution has been set forth by the government in other cases with discovery materials that potentially contained sensitive information implicating security and privacy concerns.   The alternative—an overly broad protective order—would unduly and improperly burden Mr. Allen and his counsel by applying to materials that have

nothing to do with third parties and would, intentionally or not, infringe upon Mr. Allen's Fifth and Sixth Amendment rights.

Because the Proposed Protective Order is unduly burdensome and prejudices Mr. Allen, and because there are more narrowly tailored solutions that would more than address the government's articulated concerns, the Court should reject the government's request.

### LEGAL STANDARD

"Protective orders are the exception, not the rule," *United States v. Stone*, No. 10-cr-20123, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012), and are "subject always to the Sixth Amendment's limitations," *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015).

Under Federal Rule of Criminal Procedure 16(d)(1), "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" by entering a protective order regulating discovery. "The burden of showing 'good cause' is on the party seeking the order," here, the government. *Cordova*, 806 F.3d at 1090. To determine whether "good cause" exists, courts have considered "whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019); *see Cordova*, 806 F.3d at 1090. Importantly, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,

2

do not support a good cause showing." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018) (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)); *see United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) ("A finding of harm must be based on a particular factual demonstration of potential harm, not on conclusory statements." (internal quotation marks and citation omitted)). Courts must ensure "that the protection afforded to [discovery] information is no broader than is necessary to accomplish the [proffered] goals of the protective order." *Smith*, 985 F. Supp. 2d at 524 (alteration in original) (internal quotation marks and citation omitted). And while "blanket protective orders" could be "useful and expeditious in large scale litigation," *Smith*, 985 F. Supp. 2d at 545 (internal quotation marks and citation omitted), involving "thousands of documents [that] could cripple the court," *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 n.18 (3d Cir. 1986), the court must ensure these orders are not in fact "overbroad and unnecessary," *Smith*, 985 F. Supp. 2d at 545.

## ARGUMENT

The government's Proposed Protective Order is impermissibly broad, unduly burdensome, and prejudicial to Mr. Allen, in contravention of his Fifth and Sixth Amendment rights to a fair and speedy trial. While it is Mr. Allen's desire and in his best interests to quickly move this case forward, the Court should not allow the government to leverage its duty of prompt disclosure by forcing Mr. Allen to agree to a blanket, overly broad Protective Order. The Court should instead enter a

Protective Order that is narrowly tailored to address the government's concerns about third-party privacy and law enforcement security interests.   The defense's proposed order ably addresses those concerns.

## I.    The Government's Proposed Protective Order is Unduly Burdensome and Prejudices Mr. Allen

The government has failed to show good cause as to why its Proposed Protective Order should apply to "[a]ll materials provided by the United States," ECF 26-1 ¶ 1, rendering it unduly burdensome and prejudicial to Mr. Allen.   The government cites three concrete "risks" to justify its broad request: that so-called "unfettered discovery" would risk, *first*, "the privacy interests of third parties;" *second*, "law enforcement interests in protecting sensitive security information;" and *third*, "the governmental and societal interest in avoiding misuse of discovery materials in this proceeding to further a message of political violence," ECF 26 at 17.

But there is a simple mechanism available to allay each of the government's concerns: "Sensitive" and "Highly Sensitive" designations.   The government admits that it "may designate some of this information as 'Sensitive' under the protective order," but goes on to say that other materials may implicate "third-party privacy concerns but not necessarily fall within the illustrative list of Sensitive materials set out in the order."   *Id.* at 18.   What the government is asking for, in essence, is a short-cut around reviewing discovery materials for the sensitivity concerns it claims to care about by broadly including "all" materials in the Proposed Protective Order.

This is not the exceptionally rare case where a blanket protective order would

be useful or expeditious. It is not a case involving "thousands of documents [that] could cripple the court," *Cipollone*, 785 F.2d at 1122 n.18, like those involved in a large-scale product liability litigation. The charged conduct in this case was confined in time, space, and impact, and defense counsel anticipates (though does not know for certain, given that the government has not provided any discovery) that discovery related to the underlying issues will also be so confined. Nowhere does the government explain why a blanket protective order is "no broader than is necessary to accomplish" its goals. *See Smith*, 985 F. Supp. 2d at 524. The government never specifies *which* discovery materials implicate its concerns, or why the Court could not issue a protective order limited to specific categories of sensitive documents, like law enforcement personnel files (outside of Personnel Performance Management System files, which are already typically designated as "Sensitive"). The government's reasoning amounts to "conclusory statements" about broad-based privacy and misuse concerns, nowhere addressing why its solution is narrowly tailored.

The law requires more. As it stands, the Proposed Protective Order unduly burdens and prejudices Mr. Allen. Instead of designating material from the get-go that it deems sensitive to its concerns, the Proposed Protective Order improperly shifts the burden on the defense to file a motion to exclude information from that Order. As proposed, Mr. Allen would need to file a motion before he can show his case manager a discovery document demonstrating his personal history so that he may enroll into a program while in pretrial detention. He could not, under the

5

Proposed Protective Order, show a police report to an aggressive and misinformed inmate that he is not accused of a sex offense.[1] There is simply no justification for this intrusion into Mr. Allen's Fifth and Sixth Amendment rights, and the government hardly attempts to provide one.

The government cites several district court cases where courts have found that "unfettered disclosure" would risk privacy, law enforcement, governmental, or societal interests. *See* ECF 26 at 17–20. These cases are inapposite. As this Court well knows, in *United States v. Fortenberry*, the government's harm was specific and concrete because it articulated the risks to the privacy interests of "identified individuals who are either witnesses or uncharged subjects of the investigation." No. 24-cr-221, 2024 WL 3202271, at *2 (D.D.C. June 27, 2024); *see* ECF 26 at 17–18. This case does not bear the same risks, and the government has not provided any specific examples to support the alleged harm that could follow. In *United States v. Dixon*, the government moved for a protective order limiting only "the viewing, use, dissemination, and post-litigation retention of police body-worn camera [] material," based on the substantial interests of the victim and witnesses to the defendant's alleged crime. 355 F. Supp. 3d at 3–4 (noting that material displayed the victim's

---

[1] Mr. Allen has not yet been provided with any discovery, so must hypothesize possible harm. But counsel can represent that defense attorneys are routinely required to address unexpected collateral situations for clients that require the use of documentation contained in discovery. And it remains the government's burden to demonstrate why a protective order is necessary for each piece of discovery for which it seeks an order. *See Cordova*, 806 F.3d at 1090; *Cipollone*, 785 F.2d at 1122.

identity and face, unrelated civilian witnesses, and personal identifying information of officers); *see* ECF 26 at 18.   The government's Proposed Protective Order is not so circumscribed here, and the material would not relate to the rights of crime victims, as was the case in *Dixon*.

In *United States v. Cudd*, a January 6 Capitol Attack case, this Court found that the protective order was necessary given the "staggering" "volume of potentially discoverable information."   534 F. Supp. 3d 48, 51 (D.D.C. 2021); *see* ECF 26 at 18– 19.   This is not a case involving "more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies," "approximately 1,600 electronic devices," and "over 210,000 tips," *Cudd*, 534 F. Supp. 3d at 51—a similarly broad protective order in this case would not service anywhere close to the same volume of discoverable materials and is therefore improper.   Finally, in *United States v. McCaughey*, a January 6 Capitol Attack case involving a defendant who "assault[ed] a police officer with a deadly or dangerous weapon," this Court specifically noted that the government's proposed protective order was "not a true 'blanket' protective order protecting *all* materials produced by the Government." 534 F. Supp. 3d 132, 136, 138 (D.D.C. 2021); *see* ECF 26 at 19.   That is exactly the opposite of the case at hand.   Moreover, in *McCaughey*, the government had "agree[d] to make every effort to provide discovery in a manner that will allow for *most discovery* to be produced *without* such designations."   534 F. Supp. 3d at 138 (internal quotation marks and citation omitted).   Of the nearly 300 files from that

7

defendant's case, "only a handful of documents" "would fall under the protective order."   *Id.* (internal quotation marks and citation omitted).

The cases cited by the government show that only when armed with specific examples and articulated reasoning concerning potential harms, or in cases with particularly large-scale discovery, may the government meet its burden to show good cause for protective orders.   The government must offer more than conclusory statements, including in cases where the "risks" were the same as those the government names here: "privacy interests," *see Dixon*, 355 F. Supp. 3d at 3, "sensitive security information," *see Cudd*, 534 F. Supp. 3d at 52, and political violence,[2] *see McCaughey*, 534 F. Supp. 3d at 136.   The government has failed to demonstrate why it is unable to circumscribe the Proposed Protective Order through sensitivity designations[3] or other narrowly tailored means and, in so doing, unduly burdens and prejudices Mr. Allen.

## II.   The Protective Order Should Only Apply to Material Designated as "Sensitive" or "Highly Sensitive"

In the past six years, judges in this District, including this Court, have entered

---

[2] The government never explains how Mr. Allen would "use discovery produced by the government improperly to advance a message of political violence."   ECF 26 at 17.   Mr. Allen has been detained pending trial and even if he were released, he would be subject to conditions of release from this Court.

[3] In fact, the government repeatedly admits that discovery potentially subject to improper use "may properly be designated Sensitive under the protective order." ECF 26 at 19; *see id.* at 18 ("the government may designate some of this information as 'Sensitive' under the protective order").

several renditions of protective orders that accommodate all of the concerns set forth in the government's motion.   The defense would not object to a protective order that is narrowly tailored to address concerns relating to "serious third-party privacy and law enforcement security interests."   ECF 26 at 1.   Usage of designations familiar to this Court such as "Sensitive" and "Highly Sensitive" would address those concerns.   For example, in a multi-codefendant case in this District where the government proffered the need to protect "unique identifying information," "witness security," and "contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case," the Protective Order proposed by the government and adopted by the court "govern[ed] materials provided by the United States at any stage of discovery during this case and which the United States has identified as either 'Sensitive' or 'Highly Sensitive.'"   Protective Order Governing Disc. at 1, 3–4, *United States v. Hostetter¸* No. 21-cr-392 (D.D.C. June 28, 2021), ECF No. 31.

In the January 6th Capitol Attack cases, the discovery provided by the government was substantially more sensitive than that which will be provided in this case.   The purported crime scene of this incident was a public area, generally accessible by any guest of the Washington Hilton.   On the other hand, revealing full discovery about the U.S. Capitol, as a crime scene, gave rise to particularized threats of national security for the *entire legislative branch*.   And here, the accused is preventatively detained and there is no allegation that he was working with anyone

9

else.   In the Capitol Attack prosecutions, thousands of individuals who stormed the

Capitol to obstruct the lawful election of a legitimate president were still at large.

In addition to those potentially identifiable by law enforcement, there were millions

of other sympathetic, like-minded individuals who believed that an insurrection was

appropriate.   As a result, the general counsel for the Capitol Police submitted the

following attestation in support of a protective order:

> The Department has significant concerns with the release of any
> of its footage to defendants in the Capitol attack cases unless
> there are safeguards in place to prevent its copying and
> dissemination.   The Department is aware of efforts made before
> January 6, 2021, by such defendants and others, to gather
> information regarding the interior of the U.S. Capitol, including
> references to the tunnels below the Grounds and maps of the
> building's layout, which information is generally not publicly
> available.   Our concern is that providing unfettered access to
> hours of extremely sensitive information to defendants who have
> already shown a desire to interfere with the democratic process
> will result in the layout, vulnerabilities and security weaknesses
> of the U.S. Capitol being collected, exposed and passed on to those
> who might wish to attack the Capitol again.

Decl. of Thomas A. DiBiase ¶ 14, *United States v. Pope*, No. 21-cr-128 (D.D.C. Nov.

12, 2022), ECF No. 71-1 (footnote omitted).

Still, in *Pope* and in other January 6th Capitol Attack cases, including ones

cited by the government in its motion, *Cudd* and *McCaughey*, the government agreed

to protective orders that were far less restrictive than the one proposed here.   The

protective orders in all of those cases only applied to "materials provided by the

United States at any stage of discovery during this case *and which the United States*

*has identified as either 'Sensitive' or 'Highly Sensitive.'*"   Protective Order Governing

10

Disc., *United States v. Cudd*, ¶ 1, No. 21-cr-68 (D.D.C. Apr. 21, 2021), ECF No. 40 (emphasis added); Protective Order Governing Disc., *United States v. McCaughey*, ¶ 1, No. 21-cr-40 (D.D.C. Apr. 21, 2021), ECF No. 40 (emphasis added); Protective Order Governing Disc., *United States v. Pope*, ¶ 1, No. 21-cr-128 (D.D.C. May 5, 2021), ECF No. 26 (emphasis added).   Those protective orders *did not* apply to "all materials."

In light of these examples, the government cannot maintain that its Proposed Protective Order is narrowly tailored to address its concerns about third-party privacy and law enforcement security interests.   It has failed to meet its burden to show cause for a blanket protective order for "all materials."

### CONCLUSION

For the foregoing reasons, Mr. Allen respectfully requests that the Court deny the government's motion for a protective order.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
EUGENE OHM
TEZIRA ABE
SUZANNE ZAKARIA
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.   20004
(202) 208-7500

11