**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| v. |
| **COLE TOMAS ALLEN**, |
| Defendant. |

Case No. 1:26-cr-00098 (TNM)

**MEMORANDUM ORDER**

In discovery, the Government anticipates disclosing materials that reveal nonparties' personal information and law enforcement tactics.  To expedite discovery while safeguarding those interests, the Government seeks a protective order limiting the use, dissemination, and reproduction of discovery materials.  Cole Tomas Allen agrees that a protective order is appropriate.  He disputes only the proposed order's limit on his ability to use discovery materials for "defense of this case" alone.  Proposed Protective Order ¶ 1, Ex. A to Mot. for a Protective Order, ECF No. 26-1.  This case-use limit, Allen argues, is prejudicial and more restrictive than necessary to serve the Government's interests.  But the Court finds that the Government has shown good cause for the limit.  So it grants the Government's motion and enters the proposed protective order.

**I.**

Allen stands accused of attempting to assassinate the President, assaulting a United States officer, and committing two firearm offenses.  Indictment at 1–3, ECF No. 22.  These offenses stem from Allen's alleged attempt to break into the White House Correspondents' Association Dinner at the Washington Hilton.  *See* Mot. for Protective Order ("Mot.") at 2–3, ECF No. 26.  According to the Government, he planned to kill the President at the dinner.  *Id.* at 8.  Secret

Service thwarted the attack, stopping Allen at a security checkpoint outside the dinner. *Id.* at 4. In the process, Allen shot and injured an officer. *Id.* at 3. Allen was arrested on the scene. *See id.*

Since then, the Government has gathered many potentially discoverable materials. *See* Reply at 6, ECF No. 32. But the Government has not shared anything with Allen yet. *See* Resp. to Mot. for Protective Order ("Opp'n") at 6 n.1, ECF No. 30. It expects to turn over information that could compromise third parties' privacy, potential witnesses, and law enforcement tactics. *See, e.g.*, Mot. at 1. So the Government wants assurances about how Allen will use the disclosed information.

To that end, the Government asks the Court to approve a protective order. *See* Proposed Protective Order, ECF No. 26-1. The proposed order allows the Government to mark as "sensitive" materials that implicate third-party interests. *See id.* ¶ 4. Examples include materials that divulge law enforcement "[s]ources and methods" and "[i]nformation that may jeopardize witness security." *Id.* Once the Government designates material as sensitive, special restrictions apply. *See, e.g.*, *id.* ¶¶ 5, 6, 8–9. Allen does not take issue with these provisions.

Instead, he criticizes the proposed order's protections for materials not designated as "sensitive." Under the draft, "Covered Materials" "may be used by the defendant, the legal defense team, and defense counsel solely in connection with the defense of this case." *Id.* ¶ 1; *see also id.* ¶ 3 (limiting the defense team's ability to "copy or reproduce the Covered Materials"). And it defines "Covered Materials" as "[a]ll materials provided by the United States in preparation for, or in connection with, any stage of this case" subject to three carve outs. *Id.* ¶ 1. The proposed order automatically excludes from its scope parts of the "public court record," documents "derived directly from [the] defendant or that pertain solely to [him],"

and information that "the defense obtains by means other than discovery." *Id.* ¶ 10. In other words, Allen can only use discovery materials to assist his defense in this case unless the material falls into one of the three exceptions.

Allen maintains that the Governmnent has not adequately justified this case-use limitation and argues that the proposed order's protocols for sensitive material alone serve the Government's interests. *See* Opp'n, ECF No. 30. Over that objection, the Government asks the Court to enter the protective order. *See* Mot., ECF No. 26. The Government's motion is ripe.

## II.

In a criminal case, the Government must "produce, upon the defendant's request, any documents and data that are material to preparing the defense." *United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019) (citing Fed. R. Crim. P. 16(a)(1)(A)–(G)). But "the court may, for good cause, deny, restrict, or defer discovery . . . or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). That is, a court may issue a protective order if the Government shows good cause for it. *See Dixon*, 355 F. Supp. 3d at 4.

The good cause analysis turns on three factors: "whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Id.* And the Government's good cause showing must be "particularized" and "specific," bearing in mind that "the level of particularity required depends on the nature and type of protective order at issue." *Id.*

"[O]nce a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018). Indeed, "the trial court can and should" issue protective orders "where

appropriate." *Alderman v. United States*, 394 U.S. 165, 185 (1969).  And courts often enter protective orders when necessary "to expedite the flow of discovery in cases involving a large amount of sensitive information."  *United States v. McCaughey*, 534 F. Supp. 3d 132, 138 (D.D.C. 2021).

### III.

With those principles in mind, the Court turns to the parties' narrow dispute over the proposed protective order.  Again, they focus on its requirement that Allen and his defense team use "Covered Materials" only for case-specific reasons.  *See* Proposed Protective Order ¶ 1. Because the Government has shown good cause for this requirement, the Court grants the Government's motion.

### i.

First, the unfettered "disclosure of the materials in question would pose a hazard to others."  *Dixon*, 355 F. Supp. 3d at 4.  The Government plans to disclose "at least thousands of pages of investigative files, gigabytes of data obtained from electronic devices and accounts, dozens of hours of CCTV footage, voluminous third-party business records, and hundreds of crime scene photographs."  Reply at 6.  Those documents are "very likely to contain sensitive information."  Mot. at 18 (quoting *United States v. Cudd*, 534 F. Supp. 3d 48, 53 (D.D.C. 2021)).

Some documents will include sensitive information about third parties.  *Id.*  Discovery might reveal medical records from the injured Secret Service officer.  *Cf. Dixon*, 355 F. Supp. 3d at 4–5 (finding that victim privacy, among other things, justified a protective order). "[W]itnesses to [Allen's] alleged crime" also "have substantial interests at stake."  *Id.* at 4.  The "dozens of hours of CCTV footage," for example, may show hotel patrons, staff, and dinner

attendees.  Reply at 6.  Third parties "who have some relationship to the defendant" also deserve protection from unnecessary disclosure of their personal information.  Mot. at 18.

Other documents will reveal law enforcement tactics.  *See id.* at 19–20.  "Courts have regularly found that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might adversely affect law enforcement interests."  *McCaughey*, 534 F. Supp. 3d at 139 (cleaned up).  Compromised law enforcement tactics are a real possibility here.  The charged offenses, after all, involve Allen's conduct at a Secret Service checkpoint placed to ensure the President's safety at a high-profile dinner.  Unsurprisingly, then, the Government expects that discovery materials will "implicate measures taken by the [U.S. Secret Service] and law enforcement partners to secure the event."  Mot. at 19.

Considering the "nature and circumstances of the alleged crime" underscores the danger unrestricted discovery disclosure could pose to third parties.  *Dixon*, 355 F. Supp. 3d at 4.  Taking account of the "crime charged helps assess the possible threats to the safety and privacy" of crime victims and witnesses.  *Id.*  Allen stands accused of attempting to assassinate the President at a high-profile event.  *See* Indictment at 1.  That charge has generated significant media interest.  *See, e.g.*, Reply at 3.  So the Court shares the Government's concern that unnecessary disclosures of third parties' information could be especially prejudicial to those nonparties.

Allen does not seriously discount risks to others.  Instead, he criticizes the proposed order as overbroad.  *See* Opp'n at 4.  He faults the Government for failing to give "specific examples" about the "potential harms"—say by identifying the witnesses who might be prejudiced.  *Id.* at 8.  He adds that the proposed order already accommodates the Government's privacy concerns by

imposing special restrictions on material the Government designates as "Sensitive." *Id.* at 4, 8; *see* Proposed Protective Order ¶ 4. True, the Government's proposed order paints with a broad brush. And the case-use limit might, for some documents, duplicate the protection the Government could achieve by designating the material as sensitive.

But the limit ensures efficient discovery. Without it, the Government would need to comb through the thousands of document pages and files it plans to produce. Reply at 6. And while that task would not be quite as burdensome in this case as in others, *cf. United States v. Cudd*, 534 F. Supp. 3d 48, 51 (D.D.C. 2021), the Court agrees with the Government that page-by-page review at this early stage would be "inconsistent with rules requiring efficient and expeditious discovery," *Dixon*, 355 F. Supp. 3d at 8.

More, the proposed order is narrower than Allen fears. Though it broadly limits "Covered Materials" to use in this case, many materials fall outside that limitation. *See, e.g.*, Proposed Protective Order ¶ 10. Among the excluded materials are those in "the public court record" and those "derived directly from defendant or that pertain solely to defendant." *Id.* And the protective order can be modified at any time. *See id.* ¶ 13. Given this context, the proposed order is sufficiently "particularized" and "specific." *Dixon*, 355 F. Supp. 3d at 4; *see McCaughey*, 534 F. Supp. 3d at 138 ("The nature of the showing of particularity . . . depends upon the nature or type of protective order at issue." (cleaned up)).

### ii.

Second, the proposed order will not prejudice Allen. *See Dixon*, 355 F. Supp. 3d at 4. It permits Allen and his team to access the Government's materials and use them in in this case. Proposed Protective Order ¶ 1. Allen may well wish to use what he learns in discovery for other purposes. But criminal defendants do not have an unfettered right to share discovery documents.

6

*See, e.g.*, *Cudd*, 534 F. Supp. 3d at 56 (rejecting a defendant's objections to a protective order and criticizing the defendant's apparent interest in trying the "case in the court of public opinion pretrial through dissemination of . . . selective disclosures to the media"). And, again, modification remains a possibility. *See* Proposed Protective Order ¶ 13.

Allen protests that the case-use limit "shifts the burden on the defense," requiring him to seek an exemption whenever he needs to use a document for a non-case related purpose. Opp'n at 5. The hypotheticals Allen offers to support his concerns miss the mark. *Id.* at 5–6. Both ignore the proposed order's exemptions. Allen first worries that he would have to file a motion before showing "personal history" documents to his case manager. *See id.* at 5. That is incorrect. The proposed order exempts materials "that pertain solely to defendant." Proposed Protective Order ¶ 10(b). Allen also says he could not "show a police report to an aggressive and misinformed inmate that he is not accused of a sex offense." Opp'n at 6. Again, the Court doubts that the case-use limit applies. *See* Proposed Protective Order ¶ 10(b) (listing "arrest records" as an example of materials excluded from the order's coverage because they "pertain solely to defendant").

In any event, engaging in these hypotheticals does not serve justice. At this early stage, the Court finds it far more important that the case-use limit avoids prejudice to both Allen and the Government. This limit permits the Government to skip the time-consuming task of reviewing each page and file to decide whether "sensitive" designation is appropriate. *See* Reply at 6. Allen, in turn, will benefit from the Government's efficiency gains through faster discovery. And, again, the Court can always modify the order if it actually burdens Allen. *See* Proposed Protective Order ¶ 13.

**iii.**

Third, "any public interest in the materials covered under the protective order will not be harmed by its issuance." *McCaughey*, 534 F. Supp. 3d at 142.  The Court recognizes the public interest in this case.  The proposed order accommodates that interest by excluding information that has, or will become, part of the public record.  Protective Order ¶ 10(a).  And the public has very little, if any, interest in the third-party information the Government seeks to protect.  Allen does not claim otherwise.  More, courts handling cases with similar charged crimes have entered protective orders with case-use limitations.  *See United States v. Routh*, Case No. 24-cr-80116, ECF No. 69 (S.D. Fla.).  So the Court sees no public interest reason to reject the case-use limit.

**IV.**

Cognizant of the third-party interests at stake and the need for swift discovery, the Court concludes that the Government has shown good cause for the case-use requirement.  Good cause likewise supports the order's other requirements.  So the Court approves the Government's proposed order.  With the protective order in effect, the Court expects the Government will promptly share with Allen the materials he is due.

For the reasons stated above, the Court **ORDERS** that the Government's [26] Motion for Protective Order is **GRANTED**.

**SO ORDERED**.

Dated: June 23, 2026

TREVOR N. McFADDEN, U.S.D.J.

8