**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **26-CR-98-TNM** |
| **COLE TOMAS ALLEN** | : | |

**MOTION TO REMOVE ALL RESTRAINTS**

Cole Tomas Allen, through undersigned counsel, respectfully requests that this Honorable Court permit him to attend all future court proceedings without being physically restrained.

"THE PRISONER is to be called to the bar by his name; and it is laid down in our ancient books, that, though under an indictment of the highest nature, he must be brought to the bar without irons, or any manner of shackles or bonds; unless there be evident danger of an escape . . . ." 4 William Blackstone, *Commentaries on the Laws of England* 317 (1769). In line with this long-held common law principle on shackling defendants, Mr. Allen urges the Court to conduct an individualized inquiry into whether there is a particular reason that he should be restrained during future judicial proceedings. In considering Mr. Allen's constitutional rights with the safety and security needs of the Court, the balance favors permitting Mr. Allen to appear at all future proceedings without restraints.

## I. History of Restraining Criminal Defendants in the District of Columbia

Criminal defendants in the District of Columbia have not generally been

restrained in court without an individualized request from the U.S. Marshals Service ("USMS") to the presiding Magistrate or District Judge. This long-standing policy had been greatly successful. The USMS exercised its ability to request that defendants be restrained with discretion—only doing so in cases where defendants posed a risk of escape or physical safety risk to the U.S. Marshals or others in the courtroom. This policy aligned with the constitutional rights afforded to all criminal defendants, including the rights to be presumed innocent, to communicate with counsel, and to maintain their dignity under criminal prosecution. However, the recently implemented procedure, which presumes that all criminal defendants must be restrained for court proceedings, though not necessarily placed in five-point restraints, contravenes defendants' constitutional rights to due process, access to counsel, and fair and unbiased proceedings.

It is undersigned counsels' understanding that the new policy for restraining criminal defendants at all proceedings was implemented in response to a single incident[1] where a defendant attempted to walk out of the courtroom while he was being monitored by two USMS deputies. It is also counsels' understanding that this incident did not result from inadequate training or funding for the USMS.

One minor incident after more than ten years of successful practice should not be the reason to indiscriminately shackle all criminal defendants every time they

[1] To counsels' knowledge, this is the only such incident that has occurred in the past decade.

appear in court. Shackling defendants humiliates them in front of their families, traumatizes children who come to see their parents, and demeans presumptively innocent individuals who pose no actual security risk.

## II. Defendants Have Constitutional Rights to be Free of Unwarranted Restraints in Court

Under the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. And as the Supreme Court has "always" and repeatedly recognized, "[l]iberty from bodily restraint" is "the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316 (alteration in original) (quoting *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 18 (1979)). Further, defendants have a right to counsel in criminal proceedings. U.S. Const. amend. VI; *see Gideon v. Wainwright*, 372 U.S. 335, 340–45 (1963). Considering these protections together, because shackling restricts an individual's liberty and may interfere with an individual's ability to communicate with his lawyer or otherwise participate in his own defense, adequate process should be afforded before shackling is imposed. This should apply in any criminal proceeding, not just the ones before a jury.

The Ninth Circuit considered the constitutionality of a policy in the Southern District of California that, similar to the one here, required the shackling of criminal defendants during all pretrial hearings. *United States v. Sanchez-Gomez*, 859 F.3d

649, 660 (9th Cir. 2015) (en banc), *vacated on other grounds*, 584 U.S. 381 (2018).[2] The en banc court, citing *Deck v. Missouri*¸ 544 U.S. 622 (2005),[3] explained that the

---

2 The Supreme Court's decision to vacate the en banc decision was based solely on a finding that the case was moot because the defendants who had brought the case were no longer subject to restraints.

3 The D.C. Circuit has yet to weigh in on whether *Deck*—which involved physical restraints visible to a jury—should extend to nonjury proceedings. Mr. Allen recognizes that two other courts of appeals have held that it does not. *See United States v. LaFond*, 783 F.3d 1216, 1225 (11th Cir. 2015) ("[T]he rule against shackling pertains only to a jury trial[.]"); *United States v. Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) ("We decline to extend the rule . . . requiring an independent, judicial evaluation of the need to restrain a party in court [] to the context of non-jury sentencing proceedings."); *but see Sanchez-Gomez*, 859 F.3d at 661 (finding that *Deck* "applies whether the proceeding is pretrial, trial, or sentencing, with a jury or without").

Undersigned counsel recognize that the Court has concluded in another matter that *Deck* and its progeny are inapplicable in non-jury proceedings. It is Mr. Allen's position, however, that the principles elucidated by the Supreme Court in *Deck* apply here. In *Deck*, the Court explained three "fundamental legal principles" that underlie the common law doctrine that defendants should generally appear in court unshackled. First, "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." 544 U.S. at 630 (considering example of the impact of shackles to potential factfinders). Second, "[t]he use of physical restraints diminishes" the right to counsel. *See id.* at 631. "Shackles can interfere with the accused's 'ability to communicate' with his lawyer." *See id.* (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). Third, shackles impinge on the "courtroom's formal dignity, which includes the respectful treatment of defendants . . . and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *See id.* These factors are equally applicable to non-jury proceedings.

Although judges are uniquely capable of making objective determinations, they are not more psychologically insulated by the sight of defendants in restraints than members of a jury and often serve as the factfinder in cases. *See People v. Best*, 19 N.Y.3d 739, 744 (2012) ("The routine and unexplained use of visible restraints does violence to [the fundamental legal] principles [explained in *Deck*], essential pillars of a fair and civilized criminal justice system that are no less implicated when the factfinder is the trial judge rather than a jury. . . . [J]udges are human, and the sight of a defendant in restraints may unconsciously influence even a judicial factfinder.").

right of a criminal defendant to be free from unwarranted shackling comes from the Due Process Clause, which "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Sanchez-Gomez*, 859 F.3d at 662 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). This right also derives from the Sixth Amendment right to counsel and participation in one's own defense. *Id.* at 660.

The opinion was forceful in its finding that presiding judges must make individualized determinations before shackling a defendant for security needs during *any* proceeding:

> This right to be free from unwarranted shackles no matter the proceeding respects our foundational principle that defendants are innocent until proven guilty. The principle isn't limited to juries or trial proceedings. It includes the perception of any person who may walk into a public courtroom, as well as those of the jury, the judge and court personnel. A presumptively innocent defendant has the right to be treated with respect and dignity in a public courtroom, not like a bear on a chain.

*Id.* at 661. The Ninth Circuit specifically rejected the argument that general safety and staffing concerns justified the routine full shackling of defendants in court. *See id.* at 666. Ultimately, it concluded, "[b]efore a presumptively innocent defendant may be shackled, the court must make *an individualized decision* that a compelling government purpose would be served and that the shackles are the least restrictive means for maintaining security and order in the courtroom." *Id.* at 661 (emphasis added).

*Sanchez-Gomez* reaffirmed the longstanding common law requirement that the government must establish a specific need before shackling a defendant in court. *See*, *e.g.*, 4 William Blackstone, *Commentaries on the Laws of England* 317 (1769) (stating that defendant should be brought to court without "shackles or bonds," absent evidence of their necessity); 2 William Hawkins, *Treatise of Pleas of the Crown* 308 (2d ed. 1726) (stating that prisoner at time of arraignment "ought not to be brought to the Bar in a contumelious Manner; as with his Hands tied together, or any other Mark of Ignominy and Reproach: nor even with Fetters on his Feet, unless there be some Danger of a Rescous or Escape"); 2 Matthew Hale, *History of the Pleas of the Crown* 216, 219 (1736) ("The prisoner, tho under an indictment of the highest crime, must be brought to the bar without irons, and all manner of shackles or bonds . . . unless there be danger of escape."); 3 Edward Coke, *Institutes of the Lawes of England* 35 (1644) ("It is an abuse that prisoners be chained with irons, or put to any pain before they be attainted."); *see generally Sanchez-Gomez*, 859 F.3d at 664–65 (discussing the "[e]arly American" tradition of prohibiting shackling without any individualized finding).

## III. The Decision to Shackle a Criminal Defendant Must Be Made by the Court

"Before a presumptively innocent defendant may be shackled, the court must make an individualized decision that a compelling government purpose would be served and that shackles are the least restrictive means for maintaining security and order in the courtroom." *Sanchez-Gomez*, 859 F.3d at 661. And courts "cannot

delegate this constitutional question to those who provide security, such as the U.S. Marshals Service. Nor can courts institute routine shackling policies reflecting a presumption that shackles are necessary in every case." *Id.*; *see also United States v. Williams*, 736 F. Supp. 3d 400, 404–08 (W.D. Va. 2024); *People v. Hamlett*, 193 N.Y.S.3d 658, 661 (Crim. Ct. Queens Cty. 2023) ("[A] general, indiscriminate policy to handcuff any incarcerated person produced to the courtroom is unlawful. A person cannot be shackled during criminal proceedings without a specific factual showing of actual necessity."); *see also Zuber*, 118 F.3d at 105 (Cardamone, J., concurring) ("[A] trial judge must make an inquiry regarding the necessity for the restraints-even if no jury is present. In my view, the trial court's responsibility to satisfy itself by means of such inquiry may not be delegated to the federal marshals or other custodial personnel[.]"); *United States v. Henderson*, 915 F.3d 1127, 1133 (7th Cir. 2019) (Hamilton, J., dissenting) (judges may not defer the decision to restrain pre-trial defendants to the USMS);[4] *De Béarn v. United States*, 237 A.3d 105, 108–10 (D.C. 2020) (rejecting "unquestioning defer[ence]" to USMS on shackling decisions in the context of non-jury proceedings and criticizing decision not to review case-specific facts to determine whether shackles were warranted).

Other courts have implemented formal procedures to ensure that defendants

---

4 In *Henderson*, the defendant filed an interlocutory appeal challenging the denial of his request to remove his shackles at arraignment and future pre-trial hearings. 915 F.3d at 1129. The Seventh Circuit dismissed the appeal for lack of jurisdiction and did not address the legality of routinely using full restraints on pretrial defendants. *Id.*

are not presumptively shackled for pre-trial proceedings. For example, the Western District of Washington published a standing order directing that "the United States Marshal should not routinely bring in-custody defendants . . . to court in shackles or similar restraints, whether full-body or partial." *See* General Order 05-24, *Use of Restraints on In-Custody Persons in the Courtroom*, W.D. Wa. May 3, 2024, *available at* https://www.wawd.uscourts.gov/sites/wawd/files/05032024GO05-24UseofRestraintsonInCustodyPersons.pdf. In that district, the presiding judge is required to make an individualized assessment—based on several factors, including "[w]hether the individual has a history of conduct that would warrant increased security measures, and whether there are any less restrictive means for mitigating dangerousness or risk of flight" and "[w]hether the restraints would interfere with the individual's ability to communicate with counsel and participate in their case"—to decide whether shackling is necessary. The default presumption is that shackling is not permitted.

The Eastern District of California has similarly promulgated a local rule concerning pre-trial shackling. *See* E.D. Cal. Local Rule 401, "Shackling of In-Custody Defendants." That rule requires courts to begin assessing whether pre-trial restraints are necessary before a defendant's first appearance. There, before the initial appearance, the Marshal must make an individualized recommendation in writing to the presiding Magistrate or District Judge. The presiding judge then reviews all other available information, along with the recommendation submitted by the Marshal, before making an initial determination. That determination is then distributed to

defense counsel and the government before any hearing begins. The process provided by the E.D. Cal. Rule ensures a defendant's Due Process and Sixth Amendment rights are adequately balanced with the presiding court and USMS safety concerns and empowers counsel to request a modification to the restraint level at any time.

**IV. There Are No Individualized Reasons to Shackle Mr. Allen**

Mr. Allen presents no individualized threat or danger to himself or others, such that shackles are necessary during court proceedings. In all of Mr. Allen's court appearances before the Magistrate court, Mr. Allen was not shackled, without incident. There is no reason for the Court to conclude that Mr. Allen would disrupt proceedings or otherwise be a danger to those in the Court throughout his trial.

While Mr. Allen contends he should not be placed in any restraints, given his conduct before the judges in this District and his criminal history, he should alternatively be placed in leg-only restraints as opposed to five-point restraints. Five-point restraints hinder Mr. Allen's ability to adequately communicate with counsel by, for example, not allowing him to take notes or otherwise communicate with counsel as is common for criminal defendants. There are no individualized reasons to shackle Mr. Allen. The USMS is more than capable of supervising Mr. Allen, unshackled, during his court proceedings. As such, shackling Mr. Allen serves no valid purpose.

## CONCLUSION

For the foregoing reasons, and any other such reasons as the Court determines at a hearing on this motion, Mr. Allen respectfully requests that he be allowed to appear at all future proceedings without restraints.

Respectfully Submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
EUGENE OHM
TEZIRA ABE
SUZANNE ZAKARIA
Assistant Federal Public Defenders
625 Indiana Ave. N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500